UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Highland Bank, | Civil No. 10-4107 (SRN/AJB) |
|       Plaintiff, | |
| v. | MEMORANDUM OPINION |
| BancInsure, Inc, | AND ORDER |
|       Defendant. | |

David C. Anastasi, Garth G. Gavenda, and T. Christopher Stewart, Anastasi & Associates PA, 14985 60th Street North, Stillwater, MN 55082, for Plaintiff.

Mark J. Johnson, David A. Kessler, and Joseph A. Nilan, Gregerson Rosow Johnson & Nilan, Ltd., 650 Third Avenue South, Suite 1600, Minneapolis, MN 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

     This matter is before the Court on a Motion for Partial Summary Judgment filed by Plaintiff Highland Bank [Doc. No. 34], and a Motion for Summary Judgment filed by Defendant BancInsure, Inc. [Doc. No. 40.]  For the reasons stated below, the Court grants Defendant's Motion and denies Plaintiff's Motion.

I.     FACTUAL AND PROCEDURAL BACKGROUND

     In July 2007, Plaintiff Highland Bank lent more than $1.5 million to KLC Financial, Inc., to finance a lease for sound and light equipment for the Myth nightclub in Maplewood, Minnesota.  Myth was owned and operated by Club Rage, Inc., a Minnesota

corporation owned by Michael Ogren.[1]  As security for the loan, Highland Bank required KLC to assign to Highland Bank all of KLC's rights and interests in the lease agreement with Club Rage.  KLC had also received guaranties of repayment from both Michael Ogren and his mother, Kathryn Ogren, to secure the equipment leases, and KLC assigned these guaranties to Highland Bank as part of the loan transaction.

In 2009, Myth nightclub closed and Club Rage defaulted on its obligations under the lease.  When Highland Bank attempted to collect on the guaranty from Kathryn Ogren, she claimed that her signature on the guaranty was a forgery and that she had not agreed to guarantee the loan.  Highland Bank then submitted a claim to its insurer, Defendant BancInsure, Inc, which had issued a Financial Institution Bond ("the insuring bond") to Highland Bank which contained various insuring agreements.  Those relevant to this case are Insuring Agreement D, covering losses resulting from the forgery of certain documents, and Insuring Agreement E, covering losses from a loan approval based on a forged guaranty or lost or stolen documents.

BancInsure ultimately denied Highland Bank's claim under the insuring bond. (Nilan Aff. Ex. 4.)  According to BancInsure, the allegedly forged guaranty is not one of the documents covered by Insuring Agreement D.  Moreover, because Highland Bank could not establish that it ever had the original lease or guaranty in its possession, that KLC was its authorized representative to maintain the original documents, or that it relied

---

[1] The pleadings are less than clear about the relationship between Michael Ogren and Club Rage, but from the Court's review of the documents, it appears that Michael Ogren owned Club Rage.

on the original documents in making its lending decision, BancInsure contended that Insuring Agreement E also did not provide coverage for the loss.

## II.     DISCUSSION

Highland Bank seeks partial summary judgment on the issue of whether Insuring Agreement D provides coverage for Highland Bank's loss.  BancInsure seeks summary judgment on all of Highland Bank's claims, contending that the Court can determine as a matter of law that the insuring bond does not provide any coverage in this situation.

### A.     Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).  However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Id. at 323; Enter. Bank, 92 F.3d at 747.  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 256 (1986).

**B.    Insuring Agreement D**

The insuring bond covers "[l]oss resulting directly from . . . [f]orgery or alteration of, on, or in any Negotiable Instrument (except an Evidence of Debt), Acceptance, Withdrawal Order, receipt for the withdrawal of Property, Certificate of Deposit or Letter of Credit."  (Compl. Ex. A [Doc. No. 1-2] at 2.)  Highland Bank insists that the guaranty is a negotiable instrument within the meaning of the insuring bond.

The bond itself defines what constitutes a negotiable instrument, providing that a Negotiable Instrument means any writing

(1)    signed by the maker or drawer, and
(2)    containing any unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer, and
(3)    is payable on demand or at a definite time, and
(4)    is payable to order or bearer.

(Compl. Ex. A [Doc. No. 1-2] at 14.)  Under this definition, the guaranty is not a negotiable instrument, because not only does it contain promises other than the promise to pay, it is not payable to order or bearer.  See, e.g., Pine Bluff Nat'l Bank v. St. Paul Mercury Ins. Co., 346 F. Supp. 2d 1020, 1026 (E.D. Ark. 2004) (holding that falsified lease is not a negotiable instrument as defined in Insuring Agreement D); Fed. Deposit Ins. Corp. v. Percival, 752 F. Supp. 313, 324 (D. Neb. 1990) (noting that the case "involves a guaranty agreement, which according to Nebraska law, as well as most other states due to the adoption of the Uniform Commercial Code, is not a negotiable

instrument"). The insuring bond does not provide coverage for Highland Bank's losses under Insuring Agreement D.

**C.    Insuring Agreement E**

In relevant part, Insuring Agreement E provides coverage for:

Loss resulting directly from the Insured having, in good faith, for its own account or for the account of others,

>    (1)    acquired, sold or delivered, given value, extended credit or assumed liability on the faith of any original [document]
>
>    ***
>
>    (i)    Statement of Uncertificated Security, which
>
>    >    (i)    bears a signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent, registrar, acceptor, surety, guarantor, or of any person signing it in any other capacity which is a Forgery,
>    >
>    >    (ii)   is altered, or
>    >
>    >    (iii)  is lost or stolen.

(Compl. Ex. A [Doc. No. 1-2] at 2-3.) As a threshold matter, the parties dispute whether Highland Bank ever made a claim under Insuring Agreement E, and, assuming Highland Bank did make such a claim, whether it made the claim only under subsection (iii) and not subsection (i), so that it should be precluded from raising any claim under subsection (i) here.

The Court will assume for the purposes of the instant Motions that Highland Bank raised a sufficient claim with BancInsure under both relevant subsections of Insuring Agreement E. There is no genuine factual dispute, however, that Highland did not rely on

5

the original guaranty in making its decision to lend money to KLC and Club Rage, and thus there is no coverage under Insuring Agreement E.

First, Insuring Agreement E restricts its coverage to losses resulting from Highland Bank's extension of credit "on the faith of" an original document that was either forged or lost or stolen. This language means that Highland Bank must have relied on the original document at the time Highland Bank decided to extend credit to KLC and Club Rage. "The plain language of Insuring Agreement (E) focuses on the point in time when [the bank] made a decision to extend credit." Ohio Sav. Bank v. Progressive Cas. Ins. Co., 521 F.3d 960, 964 (8th Cir. 2008). The parties make much of their respective contentions that the decision to extend credit was made either when the loan committee met on July 12, 2007, or when the loan funded on or about July 23, 2007. But whether the extension of credit occurred on July 12 or July 23 is not relevant, because the evidence establishes that Highland Bank did not rely on the original guaranty on either date.

After Highland Bank filed its claim under the insuring bond, BancInsure investigated the claim. As part of that investigation, BancInsure requested and received sworn statements from the Vice President who was in charge of the loan, Richard Korinke, and from Patrick Bradley, President of Highland Bank. (Nilan Aff. Exs. 12, 13 [Doc. Nos. 44-12, 44-13].) Mr. Korinke testified that he never saw the original lease documents, including the guaranty. (Id. Ex. 12 at 19.) Rather, Highland Bank merely received e-mail copies of the documents from KLC Financial. (Id. at 15.) Bank President Bradley confirmed that Highland Bank would not have had the originals of the lease or

guaranty in the normal course of its loan-approval process.  (Id. Ex. 13 [Doc. No. 44-13] at 23.)[2]

Bradley recognized that Highland Bank needed to establish that it had the original lease and guaranty to establish its entitlement to coverage under the insuring bond.  In early March 2010, Bradley sent an e-mail to Highland Bank employees, stating, "I know I have made this request before but could you do one final thorough exam of files to see if you can locate the original loan documents? Not finding them could be problematic for our Bond claim."  (Id. Ex. 11 [Doc. No. 44-11] at 1.)  None of the employees to whom Bradley directed this request found any documents, and Bradley testified during BancInsure's investigation that he had no idea where the original lease documents were.  (Id. Ex. 13 at 21.)

Highland Bank contends that Bradley now claims that the Bank had and relied on the original documents when it decided to make the loan.  But the testimony Highland Bank cites in support of this contention is not as clear as Highland Bank suggests it is.  Bradley stated in an affidavit that "Highland specifically relied on obtaining the personal guaranty of Kathryn Ogren," (Bradley Aff. [Doc. No. 37] ¶ 7), but did not say that

---

[2] Highland Bank submitted affidavits from two purported experts in the field of banking practice, both of whom averred that it is not standard banking practice for a bank to have original documents during the loan approval process.  This testimony is irrelevant, because the issue here is not what standard banking practice requires, but what the insuring bond requires.  The insuring bond requires the bank to have and rely on original documents in making decisions on loans.  If this is not Highland Bank's (or any bank's) standard practice, then Highland Bank should negotiate different terms in its insuring bonds.

Highland Bank relied on the originals of those documents. He also testified at his deposition that he believed that another Bank employee had received the original documents (Stewart Aff. Ex. A [Doc. No. 51-1] at 46 (hereinafter "Bradley Dep.")), but he acknowledged that no one with authority to approve the loan saw the originals. (See id. at 54 ("Q: No loan officer at Highland Bank ever reviewed the original executed documents in this case, correct? A: Correct.").)

Only one Highland Bank employee recalled ever seeing the original documents. At the end of August 2010, Bank clerical employee Jessica Kennedy signed an affidavit in which she claimed to have seen the original loan documents sometime in July 2007, at about the same the time the loan was funded and closed. (Nilan Aff. Ex 14 [Doc. No. 44-14] ¶ 4.) As BancInsure points out, however, even if Ms. Kennedy did at some point in July 2007 see the original documents, this does not establish that Highland Bank relied on those documents in making its decision to fund the loan. (See Bradley Dep. at 53 (stating that Jessica Kennedy did not have any authority to approve a loan and that her position with Highland Bank was a clerical one).) The only testimony from loan decision makers is that they did not see, and therefore could not have relied on, the original documents.[3]

---

[3] Alternatively, Highland Bank argues that KLC was its "authorized representative" under Insuring Agreement E and that KLC had possession of the original lease documents at the time the decision to extend credit was made. The Minnesota Supreme Court has held that the party seeking coverage under the Bond must establish that the "authorized representative" was an agent of the Bank. *Nat'l City Bank v. St Paul Fire & Marine Ins. Co.,* 447 N.W.2d 171,176 (Minn. 1989). Plaintiff, however presents no evidence, by of affidavit or deposition testimony, that KLC and Highland Bank entered into any understanding that KLC would serve as Highland's agent and "authorized representative"
(continued...)

Moreover, Highland Bank's reliance on subsection (iii) of Insuring Agreement E is unavailing in any event. This subsection, which covers losses from "lost or stolen" documents, "plainly refers to an instrument that has been lost by or stolen from its rightful owner and then used wrongfully to persuade an unsuspecting bank to extend credit." Ohio Sav. Bank, 521 F.3d at 964. Here, Highland Bank alleges that it inadvertently lost the original lease and guaranty after the decision to make the loan. As the Eighth Circuit noted, however, "[l]osing collateral documents after a loan has been made is precisely the sort of practice that is excluded from coverage" by a banker's insuring bond. Id. at 965. Subsection (iii) does not provide coverage for Highland Bank's loss.

**D.     Conclusion**

The guaranty is not a negotiable instrument as that term is defined under Insuring Agreement D. Moreover, Highland Bank has failed to establish that its losses in this case arose because it relied on an original document, in its possession, that was a forgery or had been lost or stolen. Thus, BancInsure did not breach the insurance contract by denying coverage for Highland Bank's claim, and summary judgment in BancInsure's favor is appropriate.

**III.    ORDER**

---

[3](...continued)
for purposes of maintaining possession of the original lease documents in this case.

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant BancInsure, Inc.'s Motion for Summary Judgment [Doc. No. 40] is **GRANTED**; and

2. Plaintiff Highland Bank's Motion for Partial Summary Judgment [Doc. No. 34] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 24, 2012               s/ Susan Richard Nelson
                                     SUSAN RICHARD NELSON
                                     United States District Judge